ORDERED.

Dated:  April 16, 2020

Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                            Case No. 8:13-bk-13491-MGW
                                                  Chapter 11
Jet ICU Leasing,

       Debtor.
_____/

**MEMORANDUM OPINION ON COURT'S AUTHORITY
TO CORRECT FINAL JUDGMENT UNDER RULE 60(a)**

*He is called clever who cheats and plunders his friend.*[1]
                                          —French proverb

William Safire, known for tracing the origins of words in phrases in his

popular *New York Times Magazine* column *On Language*, once noted that the word

"clever" had two meanings—one of which (as suggested by the French proverb) had

taken on a darker meaning:

       Clever, since we're at it, is a word with two sides. Probably
       from a Scandinavian root, the adjective cliver appeared in

_____

[1] John R. Stone, *The Rutledge Book of World Proverbs* 68 (Rutledge 2006).

Middle English as a reference to quickness with claws. In one sense, the word has drawn on physical quickness and, by metaphoric extension, has come to mean mentally "nimble, adroit, skillful." (Clever boy!) *In another sense, the nimbleness takes on a darker meaning, as "sharp, canny, cunning, tricky, opportunistic."*[2]

Here, Michael Honeycutt is trying to be clever.

Under a settlement agreement with his former friend and business partner, Fred Judy, Honeycutt promised to use all reasonable efforts to remove Judy as a guarantor on a loan with Capital City Bank. But, after reaping the benefits of the settlement agreement, Honeycutt broke his promise to Judy. As a result, Capital City obtained a $242,488.88 judgment against Judy in state court. To compensate Judy for Honeycutt's breach, this Court entered a judgment against Honeycutt in the amount of $242,488.88—the same amount as Capital City's judgment against Judy. By linking the judgment amounts, the Court tried to ensure that Judy could recover from Honeycutt whatever he paid on the Capital City judgment. The Court, however, overlooked the fact that by the time it entered its judgment against Honeycutt, the Capital City judgment had already accrued tens of thousands of dollars in interest. Honeycutt has now devised a scheme to capitalize on the Court's mistake and profit off the judgment he caused to be entered against Judy.

---

[2] William Safire, *On Language; Too Clever by Three Quarters*, *New York Times Magazine*, section 6, page 18, January 15, 1987, *available at* https://www.nytimes.com/1987/11/15/ magazine/on-language-too-clever-by-three-quarters.html. (emphasis added).

First, Honeycutt bought Capital City's judgment against Judy. Next, Honeycutt tendered the Capital City judgment to Judy as a setoff and, based on the purported setoff, asked the Clerk of Court to record a satisfaction of Judy's judgment. According to Honeycutt, once Judy's judgment has been satisfied, the Court is powerless to correct its judgment to include the omitted interest. Finally, with Judy's judgment supposedly satisfied and this Court out of the way, Honeycutt now intends to go back to state court and collect the postjudgment interest on the Capital City judgment—which now exceeds $30,000—from Judy.

Honeycutt's scheme, however, is too clever by half.[3] Honeycutt cannot unilaterally satisfy Judy's judgment by tendering the Capital City judgment as a setoff. So Judy's judgment has not been satisfied. And because Judy's judgment has not been satisfied, this Court retains jurisdiction under Federal Rule of Civil Procedure 60(a) to correct its oversight. The Court will therefore amend Judy's judgment to include the interest it omitted and, now that Judy's judgment is equal to the Capital City judgment, set off the judgments against each other and extinguish both judgments.

---

[3] Safire has explained that the phrase "too clever by half" was "coined in George J. Whyte-Melville's 1858 book, "The Interpreter," and means 'too smart for one's own good.'" *Id.*

## I.    BACKGROUND[4]

Fred Judy and Michael Honeycutt are former business partners. Together, they formed BMF Land Development, which owned an airplane hangar.[5] Construction of the airplane hangar was financed through Capital City Bank.[6] After Judy and Honeycutt had a falling out in 2013, they decided to sever their business relationship.[7]

Under a settlement agreement between the parties, Judy agreed to convey his ownership interest in BMF Land Development to Honeycutt.[8] In exchange, Honeycutt agreed to use "all reasonable efforts" to refinance the Capital City Bank loan, which Judy and Honeycutt had personally guaranteed.[9] Although Judy conveyed his interest in BMF Land Development to Honeycutt as required under the settlement agreement, Honeycutt failed to use all reasonable efforts to have Judy removed as a guarantor on the Capital City loan, which had a balance of roughly $700,000.[10]

---

[4] Most of the background comes from the exhibits (Doc. Nos. 267 & 279) and trial transcripts (Doc. No. 288), as well as this Court's oral ruling (Doc. No. 289), from the one-day trial on a motion to enforce a settlement agreement between Fred Judy and Michael Honeycutt.

[5] *Ruling*, Doc. No. 289 at 3.

[6] *Id.*

[7] *Id.* at 4.

[8] *Id.*; *Settlement Agreement and General Release*, Doc. No. 279-1 at ¶ 16.

[9] *Ruling*, Doc. No. 289 at 4; *Settlement Agreement*, Doc. No. 279-1 at ¶ 20.

[10] *Ruling*, Doc. No. 289 at 4 – 6.

Instead, Honeycutt offered Capital City Bank $555,000 to pay off the loan.[11] For $555,000, Capital City was willing to cancel its mortgage on the airplane hangar and release one of the guarantors, but it needed at least one of the guarantors to remain on the hook.[12] According to Capital City's lawyer, the bank didn't have a preference whether Judy or Honeycutt remained as a guarantor.[13] Capital City just wasn't going to release both from their guaranties unless it got another $70,000.[14]

Rather than try to find a way to come up with the extra $70,000 to ensure Judy was released as a guarantor, Honeycutt paid Capital City the $555,000 and had himself released as a guarantor, leaving Judy solely liable for the remaining loan balance.[15] Not surprisingly, Capital City went after Judy in state court for the deficiency and ended up getting a $242,488.88 judgment against him.[16]

Judy, in turn, filed a motion in this Court seeking indemnification under the parties' settlement.[17] After a one-day trial, this Court ruled that Honeycutt breached his contractual obligation to use all reasonable efforts to refinance the Capital City

---

[11] *Id.* at 5.

[12] *Id.*; *Trial Tr.*, Doc. No. 288, at p. 105, l. 19 – p. 106, l. 1.

[13] *Deposition of David Weiss*, Doc. No. 267-4, at p. 50, l. 14 – p. 51, l. 4.

[14] *Ruling*, Doc. No. 289, at 6.

[15] *Trial Tr.*, Doc. No. 288, at p. 117, l. 25 – p. 119, l. 15.

[16] *Ruling*, Doc. No. 289, at 6.

[17] *Motion and Memorandum of Law to Enforce Settlement*, Doc. No. 244.

loan and that Honeycutt's breach caused a judgment to be entered against Judy.[18] To ensure that Judy would not suffer any damages as a result of Honeycutt's breach, this Court entered a judgment in favor of Judy for $242,488.88—the same amount of Capital City's judgment against him.[19]

The Court's intent in linking the judgment amounts was straightforward. If Capital City collected the entire state court judgment from Judy, Judy would be able to recoup from Honeycutt whatever he paid on the Capital City judgment. In doing so, however, the Court overlooked a small detail: by the time this Court ruled that Judy was entitled to judgment in the amount of $242,488.88, the Capital City judgment against Judy had accrued nearly $30,000 in postjudgment interest.[20] So Judy has a judgment against Honeycutt for $242,488.88, but Capital City's judgment against Judy is now closer to $270,000.

Honeycutt has tried to take advantage of the Court's mistake. Honeycutt acquired Capital City's judgment against Judy (presumably at a discount);[21] filed a notice that he was setting off the Capital City judgment against Judy's judgment;[22] and requested that the Clerk of Court note in the public record that Judy's judgment

---

[18] *Ruling*, Doc. No. 289, at 8 – 9.

[19] *Order Granting Motion to Enforce Settlement Agreement and Final Judgment*, Doc. No. 294.

[20] *Notice of Exercise of Right of Set-Off in Satisfaction of Judgment*, Doc. No. 305, at ¶ 5.

[21] *Assignment of Judgment*, Doc. No. 305-1.

[22] *Set-Off Notice*, Doc. No. 305, at ¶ 6.

has been satisfied.[23] If Honeycutt acquired Capital City's judgment (even at a discount) so he could use it to extinguish Judy's judgment against him, that would be one thing. But it appears Honeycutt is now claiming that, after using the Capital City judgment to satisfy Judy's judgment, there is still $28,422.20 (and counting) in interest that remains owing on the Capital City judgment, which he apparently intends to collect from Judy.[24] In short, Honeycutt seeks to make (at least) a $30,000 profit on the judgment that he caused to be entered against Judy.

## II.    CONCLUSIONS OF LAW

Ordinarily, there would be an easy solution to this problem: Federal Rule of Civil Procedure Rule 60.[25] "Rule 60(a) enables a court to ensure that its orders, judgments, and other parts of its record of proceedings are an accurate reflection of the true actions and intent of the court and the parties."[26] Under Rule 60(a), a court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a final judgment or order.[27]

---

[23] *Id.*

[24] *Transcript of December 12, 2019 Hearing*, Doc. No. 313, at 5.

[25] Rule 60 is incorporated into the Federal Rules of Bankruptcy Procedure through Rule 9024. Fed. R. Bankr. P. 9024 (providing that "Rule 60 F.R.Civ.P. applies in cases under the Code").

[26] 12 Moore's Federal Practice § 60.02 (3d ed. 2020).

[27] Fed. R. Civ. P. 60(a).

While "clerical mistakes" includes things like transcription errors and mathematical mistakes,[28] Rule 60(a) is broader than that. It can be used to correct an ambiguous judgment in order to clarify the court's intent.[29] And by its plain terms, Rule 60(a) can be used to correct an oversight or omission.[30]

A good example of a court using Rule 60(a) to correct an oversight or omission is the Fifth Circuit Court of Appeals' decision nearly thirty years ago in *Chavez v. Balesh*.[31] There, Valentina Chavez's estate sued Chavez's former employer under the Fair Labor Standards Act.[32] After a bench trial, the trial court entered findings of fact and conclusions of law in Chavez's favor, concluding that Chavez was entitled to $2,000 in unpaid wages, as well as another $2,000 in liquidated damages.[33]

But when the trial court entered its final judgment, it omitted the $2,000 in liquidated damages.[34] Three months later, the trial court, on its own, corrected the

---

[28] *Hale Container Line, Inc. v. Houston Sea Packing Co., Inc.*, 17 F.3d 1455, 1474 (11th Cir. 1998) (holding that district court may on its own initiative correct damages award that is incorrect because of erroneous mathematical computation that does not involve substantive rights of parties).

[29] *Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir. 1992) (explaining that a "district court may invoke Rule 60(a) to resolve an ambiguity in its original order to more clearly reflect its contemporaneous intent and ensure that the court's purpose is fully implemented").

[30] Fed. R. Civ. P. 60(a).

[31] 704 F.2d 774 (5th Cir. 1983).

[32] *Id.* at 775.

[33] *Id.*

[34] *Id.*

final judgment to include the omitted $2,000 in liquidated damages.[35] The former employer appealed.[36] On appeal, the *Chavez* Court held that the corrected judgment was authorized by Rule 60(a).[37]

In doing so, the *Chavez* Court looked to the Tenth Circuit Court of Appeals' decision in *Allied Materials Corp. v. Superior Products Co.*[38] In that case, the trial court orally ruled that Allied Materials was entitled to recover $1,200 from Superior Products. The following day, before Allied Materials submitted its proposed judgment, the trial court notified the parties that it meant to award $12,000 in damages—not $1,200. Satisfied that the original $1,200 award was simply a misstatement, the Tenth Circuit held that Rule 60(a) authorized the trial court to correct its mistake, explaining that Rule 60(a) applies where a judgment was "erroneous because the thing spoken, written or recorded is not what the person intended to speak, write or record."[39] Relying on *Allied Materials*, the Fifth Circuit in *Chavez* concluded that the omission of the $2,000 in liquidated damages was a mistake and therefore fell within Rule 60(a).[40]

---

[35] *Id.*

[36] *Id.* at 776.

[37] *Id.*

[38] *Id.* (citing *Allied Materials Corp. v. Superior Prods. Co.*, 620 F.2d 224 (10th Cir. 1980)).

[39] *Allied Materials Corp.*, 620 F.2d at 225 – 26.

[40] 704 F.2d at 776 – 77.

Here, this Court's failure to compensate Judy for the interest accruing on the Capital City judgment was likewise a mistake. To be sure, unlike in *Chavez*, where the trial court expressly found that the plaintiff was entitled to liquidated damages but failed to include them in the final judgment,[41] here the Court did not specifically reference the interest on the Capital City judgment in its oral ruling. But this Court's intent, which was reflected in its oral ruling, was that Judy's judgment against Honeycutt should be equal to Capital City's judgment against Judy.

By linking the two judgments, the Court intended to ensure that Judy could recover from Honeycutt whatever he had to pay Capital City. Put another way, the Court was trying to ensure that Judy would not suffer any damages because of Honeycutt's breach. The Court, however, overlooked the fact that the Capital City judgment had been accruing interest, and as a consequence, the final judgment it entered in Judy's favor does not accurately reflect the Court's intent.

Under Rule 60(a), the Court can correct the judgment to ensure it reflects the Court's original intent. It is only where the Court has changed its mind or has decided to exercise its discretion in a different manner that Rule 60(a) is off limits:

> The basic distinction between "clerical mistakes" and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of "blunders in execution" whereas the latter consist of instances where the court *changes its mind,* either because it made a legal or factual mistake in making its original determination, or because on second thought it has decided to exercise its discretion in a

---

[41] *Id.* at 775.

> manner different from the way it was exercised in the
> original determination.[42]

This isn't a situation where the Court has changed its mind. It was the Court's intent all along to ensure that the amount of Judy's judgment against Honeycutt equaled the amount of the Capital City judgment. Because the Court failed to account for the interest accruing on the Capital City judgment, however, Judy's judgment does not equal the Capital City judgment. Thus, the Court made a blunder in execution, which can be corrected under Rule 60(a).

Ordinarily, that would end the inquiry. But Honeycutt believes he has devised a way to insulate himself from this Court's power under Rule 60(a): According to Honeycutt, satisfaction of a judgment bars a later effort to alter or amend the judgment.[43]

Honeycutt contends that, by tendering the Capital City judgment as a setoff against Judy's judgment against him, he has satisfied Judy's judgment and divested this Court of jurisdiction to correct its oversight or omission:

> I need to bring up what has been the law in Florida, which
> is that once a judgment has been satisfied, it can't be
> amended or changed or reopened. And we did satisfy it.[44]

---

[42] *Blanton v. Anzalone*, 813 F.2d 1574, 1577 n.2 (9th Cir. 1987); *U.S. v. Hardy*, 646 F. App'x 299, 299 (4th Cir. 2016) (quoting *Anzalone*, 813 F.2d at 1577 n.2).

[43] *December 12 Hearing Transcript*, Doc. No. 313, at 7.

[44] *Id.*

In support of that proposition, Honeycutt cites *Morris North American, Inc. v. King*.[45]

In *Morris North American*, Richard and Diane King prevailed on their claims against Morris North American. When the Kings' lawyer prepared the final judgment, however, he omitted nearly $5,000 in damages the Kings were entitled to.[46] Further compounding the problem, King's lawyer had his clients execute a satisfaction of the flawed judgment after Morris North American paid it.[47] It wasn't until after Morris North American paid the judgment and the Kings issued a satisfaction of judgment that the Kings sought to alter or amend the judgment to include the omitted damages.[48]

Although the trial court allowed the Kings to amend their final judgment even after they had issued a satisfaction of judgment, the appellate court reversed. In doing so, the appellate court began by "noting the fundamental principle that 'a satisfaction of judgment is the last act and the end of the proceeding.'"[49] Based on that principle, the appellate court went on to hold that a "facially valid satisfaction is a complete bar to any effort to alter or amend the final judgment."[50]

---

[45] 430 So. 2d 592 (Fla. 4th DCA 1983).

[46] *Id.* at 593.

[47] *Id.*

[48] *Id.*

[49] *Id.* at 592.

[50] *Id.*

While that may be so, it's neither here nor there: unlike in *Morris North American*, there is no satisfaction of judgment in the record in this case. Nor was Honeycutt entitled to a satisfaction of judgment at the time he filed his setoff notice with the Court.

To begin with, putting aside that there is no mechanism for a judgment debtor such as Honeycutt to demand a satisfaction of judgment from a judgment creditor such as Judy, all Honeycutt has done is tender the Capital City judgment in purported satisfaction of Judy's judgment against him. Under Florida law, judgment creditors such as Judy have the right to insist on payment by cash or certified funds.[51] So simply tendering the Capital City judgment to Judy did not satisfy Judy's judgment.

It is true that section 55.141, Florida Statutes, provides a mechanism by which Honeycutt could have obtained a satisfaction of judgment from the Clerk of Court.[52] In fact, it appears Honeycutt attempted to avail himself of this option by requesting that the Clerk of Court record a satisfaction of judgment.[53]

Honeycutt, however, overlooked an important limitation on the right to a satisfaction of judgment from the Clerk of Court: a clerk of court is obligated to

---

[51] *DCC Constructors, Inc. v. Yacht Club Se., Inc.*, 839 So. 2d 731, 734 (Fla. 3d DCA 2003); 32A Fla. Jur. 2d *Judgments and Decrees* § 443 (2020).

[52] § 55.141, Fla. Stat.

[53] *Set-Off Notice*, Doc. No. 305, at ¶ 6.

record a satisfaction of judgment only when the judgment debtor *pays* the judgment

amount (plus interest and costs) into the court registry:

> *Upon such payment*, the clerk shall execute and record in the
> official records a satisfaction of judgment upon payment
> of the recording charge prescribed in s. 28.24(12).[54]

Payment means "the delivery and acceptance of money or its equivalent in discharge

of an obligation."[55]

In effect, section 55.141 creates a ministerial process for judgment debtors to

obtain a satisfaction of judgment when judgment creditors won't give them one: the

judgment debtor pays the judgment amount (plus interests and costs)—in the form of

cash or its equivalent—into the court registry. And upon receipt of the payment, the

clerk of court performs the ministerial act of recording a satisfaction of judgment.[56]

Here, Honeycutt, never paid any money to the Clerk of Court—much less the

full amount of the judgment. So the Clerk of Court was not obligated to record a

satisfaction of judgment upon receiving Honeycutt's setoff notice. And, recognizing

---

[54] § 55.141(2), Fla. Stat. (emphasis added).

[55] *Enriquillo Exp. & Imp., Inc. v. MBR Indus., Inc.*, 733 So. 2d 1124, 1126 (Fla. 4th DCA 1999) (quoting 39 Fla. Jur. 2d *Payment & Tender* § 1 (2020)); *Dirico v. Redland Estates, Inc.*, 154 So. 3d 355 (Fla. 3d DCA 2014).

[56] "Ministerial" is defined as "[o]f, relating to, or involving an act that involves obedience to instructions or laws instead of discretion, judgment, or skill; of, relating to, or involving a duty that is so plain in point of law and so clear in matter of fact that no element of discretion is left to the precise mode of its performance." Ministerial Definition, *Black's Law Dictionary* (11th ed. 2019), *available at* Westlaw. A clerk of court's duties under section 55.141, Florida Statutes, involves no discretion. The clerk of court simply computes the amount due on the judgment and confirms whether the judgment debtor has paid that amount into the court registry.

she did not have the authority to enter a satisfaction of judgment under these circumstances, the Clerk of Court declined to do so.

None of this is to say that Honeycutt cannot set off the Capital City judgment against Judy's judgment. The practice of setting off mutual judgments is an ancient one.[57] But setoff is not a matter of right.[58] It is an equitable remedy.[59] And it is the court—not a judgment debtor or a clerk of court—that has the inherent power to allow or compel setoff.[60] The decision to compel a setoff rests solely in the court's discretion.[61] Thus, setoff can only be accomplished by judicial action.[62]

Honeycutt cannot circumvent this Court's equitable power by insisting that he has the unilateral power to effect a setoff or by trying to convince the Clerk of Court to go beyond her ministerial function and exercise powers that belong only to the Court. Neither Honeycutt nor the Clerk of Court can effect a setoff—only this Court can.

---

[57] *Martin v. Wells, Fargo & Co.'s Ex.*, 28 P. 958, 959 (Ariz. 1892) ("The power of a court of law, in a proper proceeding, to set off one judgment against another, when the demands remain mutual, is undoubted. . . . The practice is so ancient and well established that it is now regarded as one of the inherent powers of a court of law."); *Holmes v. Robinson*, 4 Ohio 90 (Ohio 1829) ("The practice of setting off one judgment against another, between the same parties, and due, in the same rights, is ancient and well established."); *see also* P.V. Smith, *Set-off as Between Judgments*, 121 A.L.R. 478 (1939).

[58] *Epstein v. Epstein*, 915 So. 2d 1272, 1274 (Fla. 4th DCA 2005).

[59] *Id.*; *Chappell v. Chappell*, 253 So. 2d 281, 283 (Fla. 4th DCA 1971).

[60] *Epstein*, 915 So. 2d at 1274; *Chappell*, 253 So. 2d at 283.

[61] *Chappell*, 253 So. 2d at 283 (quoting 80 C.J.S. *Set-off and Counterclaim* § 5).

[62] *Chappell*, 253 So. 2d at 283 (quoting 80 C.J.S. *Set-off and Counterclaim* § 3).

And up to this point, the Court has not determined that Honeycutt should be allowed to set off the Capital City judgment against Judy's judgment. Therefore, Judy's final judgment has not been satisfied, which means this Court has not been divested of its authority under Rule 60(a) to correct the final judgment.

## III.   CONCLUSION

Where does that leave us? Because of an oversight or omission, the final judgment the Court entered in favor of Judy does not conform to the Court's original intent—i.e., to ensure that Judy can recover from Honeycutt whatever he has to pay on the Capital City judgment.

As of the date of this Memorandum Opinion, the Capital City judgment has accrued $36,784.70 in postjudgment interest. So Capital City's total judgment against Judy is $279,273.58. Judy's judgment against Honeycutt, however, has only accrued $7,222.31 in interest, which means Judy's judgment is only for $249,711.19. In other words, as a result of this Court's oversight, there is a $29,562.39 difference between the judgments.

Fortunately, because Judy's judgment has not been satisfied, this Court still retains jurisdiction to correct any oversight or omission under Rule 60(a). The Court will therefore enter an amended final judgment in favor of Judy and against Honeycutt in the amount of $279,273.58—the same amount owed on the Capital City judgment as of the date of this Memorandum Opinion.

Honeycutt has requested that the Capital City judgment be set off against Judy's judgment against him. Now that the Court has corrected its final judgment, it

is appropriate to set off the mutual judgments. Accordingly, the Court will enter a separate order granting Honeycutt's request for a setoff and directing Honeycutt and Judy to record satisfactions of each other's final judgments.

Attorney Dara A. Cooley is directed to serve a copy of this Memorandum Opinion on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of the opinion.

**Dara A. Cooley, Esq.**
**Wilkes & McHugh, P.A.**
*Counsel for Fred Judy*

**Patrick T. Lennon, Esq.**
**Macfarlane Ferguson & McMullen**
*Counsel for Michael Honeycutt*